# EXHIBIT A

# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TENNESSEE

| | |
|---|---|
| **ALBERTO OSUNA SANCHEZ**, on behalf of himself and all others similarly situated, *Plaintiff*, v. **NATIONAL COLLEGIATE ATHLETIC ASSOCIATION**, *Defendant*. | Case No. 3:25-cv-00062 |

## DECLARATION OF CHARLES MURRY ISO OPPOSITION TO PLAINTIFF'S VERIFIED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

**February 21, 2025**

## 1. Qualifications

1. My name is Charles Murry. I am an Associate Professor of Economics at the University of Michigan in Ann Arbor, MI, where I have been since July 2024. I am also a Research Associate at the National Bureau of Economic Research ("NBER"). The NBER is the preeminent professional association of economists in North America and membership is by invitation only. Previously, I was the Wieler Family Associate Professor of Economics at Boston College where I had been from 2018 to 2024. I was an Assistant Professor of Economics at The Pennsylvania State University ("Penn State") from 2014 to 2018, and the Strumpf Early Career Assistant Professor of Economics at Penn State from 2017 to 2018. I was also a Visiting Assistant Professor of Economics at the Massachusetts Institute of Technology ("MIT") in 2022.

2. I received a Ph.D. and M.A. in Economics from the University of Virginia in 2014 and 2010, respectively. I also received a B.S. in Economics from the University of Delaware in 2006. Between completing my undergraduate studies and starting my Ph.D. program, I worked as a Research Assistant at the Federal Reserve Board of Governors in Washington D.C.

3. My research field of specialty is Industrial Organization, which includes antitrust economics, vertical relationships between suppliers and retailers, and the economics of product markets and competition. I am an author of multiple peer-reviewed articles in leading journals in economics and business, including the Quarterly Journal of Economics, the Journal of Political Economy, the Review of Economic Studies, the International Economic Review, The Journal of Law and Economics, The RAND Journal of Economics, the International Journal of Industrial Organization, and Management Science.

4. At Penn State and Boston College I taught an upper level undergraduate course in Sports Economics that covered topics such as models of competitive balance, antitrust cases in sports leagues, price discrimination, and monopsony and labor unions. I have taught undergraduate antitrust economics at Boston College, MIT, and the University of Michigan, with standard topics including monopsony power and the application of antitrust laws to sports leagues. I have also taught courses in industrial organization at the undergraduate and Ph.D. levels.

5. I have served as an economics expert in a number of matters. I wrote a rebuttal report on behalf of Volvo for a matter that was heard in the California New Motor Vehicle Board. I have also served as a non-testifying expert consultant on sizable mergers.

6. My curriculum vitae is attached as Appendix A. A list of my prior testimony is attached as Appendix B.

## 2. Summary of Allegations

7. Plaintiff Alberto Osuna Sanchez ("Plaintiff") seeks to enjoin Defendant, the National Collegiate Athletic Association ("NCAA"), from enforcing eligibility regulations that may prevent him from playing a fourth year of Division I baseball. In particular, Defendant alleges that enforcement of the eligibility bylaws results in anticompetitive harm and violates Section 1 of the Sherman Act, because the bylaws count the Plaintiff's seasons spent competing in

8. Junior College ("JUCO") baseball towards the total number of allowable seasons that he is eligible to play at the NCAA Division I level.[1]

8. In making this argument, Plaintiff cites to the "nearly identical" request in *Pavia v. NCAA*, where the court issued a preliminary injunction preventing the NCAA from counting JUCO years as NCAA Division I eligibility years for Division I football.[2] Plaintiff concludes "[t]hus, like Pavia, Osuna should be eligible to compete in Division I athletics for a fourth year."[3]

### 3. Assignment

9. Counsel for the Defendant have asked me to review and evaluate the economic claims made by Plaintiff in his Complaint and in support of his Section I claim. They further asked me to review the *Pavia v. NCAA* case that is heavily cited by Plaintiff, as well as the Declaration of Dr. Matthew Backus in that matter.

10. In completing this assignment, I have reviewed Plaintiff's Complaint and Memorandum of Law in Support of His Motion for Temporary Restraining Order and Preliminary Injunction, the Declaration of Dr. Backus in the Pavia matter, and additional materials produced in this case and *Pavia*, as well as relevant economic literature and public materials. A list of the materials I have considered is attached as Appendix C.

11. I am being compensated for my work in this matter at my consulting rate of $950 per hour. I have been assisted in this matter by staff at Cornerstone Research, who have worked under my direction. I receive compensation from Cornerstone Research based on its collected staff billings for its support of me in this matter. My compensation is in no way contingent or based on the content of my opinions or the outcome of this or any other matter.

### 4. Opinions

12. Based on my review of Plaintiff's Complaint and Memorandum of Law in Support of His Motion for Temporary Restraining Order and Preliminary Injunction, and the Declaration of Dr. Backus in in *Pavia v. NCAA*, I find that that many of the economic arguments in the Backus Declaration apply here and are not obviated by any new analyses presented by Plaintiff. Further, I find that Plaintiff does not present any analysis or commentary addressing the differences between Division I football (the sport played by Diego Pavia) and Division I baseball (the sport played by Plaintiff).

13. In particular, I find that Plaintiff does not substantiate his claims that the at-issue eligibility rules result in anticompetitive harm. Nor does he explore the full set of alternatives to NCAA Division I baseball that are available to young athletes seeking to play baseball at the highest levels and that offer opportunities to receive compensation for that activity. I further conclude that Plaintiff fails to adequately consider the procompetitive benefits offered by the at-issue eligibility rules.

---

[1] Verified Complaint for Damages and Injunctive Relief, *Alberto Osuna Sanchez v. National Collegiate Athletic Association*, February 2, 2025 ("Complaint"), ¶¶ 1, 19–20.

[2] Complaint, ¶¶ 34, 38.

[3] Complaint, ¶ 37.

### 4.1. *Plaintiff Does Not Present Economic Evidence of Anti-Competitive Harm*

14. The term "anticompetitive harm" has a precise meaning in antitrust economics that implies reductions in quality and/or quantity below the competitive level. In input markets this reduction in quality works through reductions in input prices below the competitive level. Plaintiff has not presented evidence that the eligibility rules lead to reductions in total student-athlete compensation (i.e., price), in total opportunities for participation in student-athletics or sporting events (i.e., quantity), or in quality. As I discuss in the Section 4.3, these rules support athletic opportunities for a broad set of student-athletes (by limiting the number of seasons of participation for any *one player* in collegiate baseball) and maintain competitive balance between schools.

15. The at-issue eligibility criteria do not speak to the level of compensation that NCAA member schools offer to student-athletes. Plaintiff does not allege they are designed to increase the revenue of NCAA Division I member schools, nor to otherwise benefit the NCAA member schools at the expense of their student-athletes. On the contrary, Division I baseball is a net negative revenue program that results in financial losses for many member schools.[4]

16. Plaintiff instead focuses on the alleged harm to himself in terms of lost opportunity and forgone NIL compensation and mis-labels this alleged harm as anticompetitive harm. However, such alleged harm to Plaintiff is not evidence of anticompetitive conduct and is in fact consistent with a competitive environment. In particular, the alleged lost opportunity to the Plaintiff would result in a gained opportunity for another Division I baseball player -- a competitor – including a player who would be able to start on the Tennessee baseball team in place of Plaintiff or one who could receive more playing time and attention in the absence of Plaintiff. Such transfer of opportunities between competitors should thus not be taken as evidence of anticompetitive conduct.[5]

### 4.2. *Plaintiff Ignores Alternatives to NCAA Division I Baseball for College-Age Athletes*

17. Plaintiff offers no market definition analysis specific to baseball and does not document the full set of alternatives available to athletes seeking to play baseball at the highest levels and opportunities to receive compensation for that activity. Although the Plaintiff claims his case is nearly identical to *Pavia*, unlike football, baseball players have multiple entry points into professional leagues. First, all high school graduates are directly eligible for the MLB draft in the first year after graduating. Any athlete (including JUCO participants) who does not join the MLB or enter an NCAA program remains eligible for the MLB draft in future years. Athletes who do enter an NCAA program will become draft eligible after their junior year or

---

[4] In particular, the UNC Chapel Hill baseball team had a net loss of $1.8 million for the 2022-23 season. *See* Greg Barnes, "Next Level: UNC Athletics Financial Report," *Inside Carolina*, February 6, 2024, https://247sports.com/college/north-carolina/article/next-level-unc-athletics-financial-report-2022-23-226713624/#:~:text=UNC's%2028%20sports%20%E2%80%93%2013%20men's,net%20loss%20of%20$1.8%20million. *See also*, Ross Dellenger, "LSU Dwarfs Most SEC Brethren, Others Nationwide in Baseball Revenue, Profit," *The Advocate*, June 1, 2017, https://www.theadvocate.com/baton_rouge/sports/lsu/lsu-dwarfs-most-sec-brethren-others-nationwide-in-baseball-revenue-profit/article_5edd22c0-465c-11e7-8b99-c709d5eb08c1.html.

[5] *See* Dan Butrymowicz, "Antitrust Violation vs. Injury-in-Fact: A distinction that makes a difference," February 26, 2016, https://www.ftc.gov/enforcement/competition-matters/2016/02/antitrust-violation-vs-injury-fact-distinction-makes-difference, ("In private cases, the distinction between harm to competition and harm to an individual often seems academic because the private plaintiffs typically attempt to prove harm to competition by showing they were injured. But when courts and litigants miss this doctrinal distinction on the road to resolving a case, it can have significant implications for antitrust law and policy.").

their 21st birthday.[6] Even athletes who do not enter the MLB have additional opportunities to play professional baseball through MLB partner leagues or other independent leagues, such as Atlantic League of Professional Baseball or the Empire Professional Baseball League without entering the MLB draft.[7]

18. Given the additional entry points into the MLB draft, playing for a JUCO school offers benefits relative to NCAA participation for players seeking to join the MLB. Unlike NCAA athletes, JUCO athletes can participate in the MLB draft while enrolled in school. Further, a former JUCO athlete who transfers to an NCAA program will regain MLB draft eligibility at their 21st birthday. In contrast, an athlete who joins an NCAA program immediately upon graduating high school is ineligible for the MLB draft for three years, or until their 21st birthday.[8]

### 4.3. *Plaintiff Fails to Adequately Evaluate the Procompetitive Benefits of the at-Issue Eligibility Criteria*

19. Similarly, while Plaintiff claims that "any [procompetitive] benefits [the eligibility regulations] provide are far outweighed by the harm to competition," he does not provide an analysis of the procompetitive benefits.[9] The term "procompetitive benefits" likewise has a precise meaning in antitrust economics, and a proper assessment of them should include an evaluation of the impact of the challenged rules on increased quality and quantity of output.

20. Eligibility criteria are necessary to create and preserve differentiated athletic products; in this case, an environment for intercollegiate competition among student-athletes. For example, eligibility criteria restricting men from women's softball teams creates a differentiated product, i.e., women's softball, increasing the quality of intercollegiate competition for both female athletes and fans of women's softball. In a similar manner, the at-issue eligibility criteria support distinct opportunities for student-athletes of a certain skill and experience level, and offers a benefit to fans by delivering an athletic entertainment product that is different than other options (i.e., professional sports teams).

21. Without the at-issue eligibility criteria, prospective Division I baseball players may be incentivized to first join JUCO baseball teams to develop their skills before transferring to NCAA Division I schools. This change in incentive structure has the potential to shift the current competitive balance equilibrium and turn delayed enrolment to Division I schools into a norm. Such a shift in norms may harm prospective student-athletes at Division I schools, who are either unable to compete with a cohort of athletes who have honed their skills at JUCO teams before enrolling, or are themselves pressured into delaying enrollment into Division I schools themselves, thus postponing their post-college career.

22. Crucially, Plaintiff's theory of harm does not provide the Defendant with a financial motivation to enforce the at-issue eligibility criteria. Plaintiff does not claim the criteria are designed to increase Defendant revenues or the revenue of member schools, or to provide other benefits to the NCAA and member schools at the expense of student athletes. The enforcement of these criteria is instead consistent with the notion that Defendants are

---

[6] "Rule 4 Draft," *MLB*, https://www.mlb.com/glossary/transactions/rule-4-draft.

[7] "Atlantic League Pro Baseball," *Atlantic League*, https://atlanticleague.com/; "Empire Baseball League," *Empire League*, https://empireproleague.com/.

[8] "Rule 4 Draft," *MLB*, https://www.mlb.com/glossary/transactions/rule-4-draft.

[9] Complaint, ¶ 61.

motivated to preserve opportunities for a broad set of student-athletes and maintain the distinctive nature of intercollegiate competition.

CHARLES MURRY declares under penalty of perjury, pursuant to 28 U.S.C. §1746, that the preceding is true and correct.

Signed on the 21 of February, 2025, in Ann Arbor, MI

_____

Charles Murry, Ph.D.

# Appendix A

# Charles Murry

✉ ctmurry@umich.edu
🌐 https://charliemurry.github.io/
🏛 Lorch Hall, 611 Tappan Ave, University of Michigan, Ann Arbor, MI 48109 USA

## Current Academic Appointments

2024 – pres.     **Associate Professor**, Department of Economics, UNIVERSITY OF MICHIGAN
                 **Research Associate**, National Bureau of Economic Research

## Previous Academic Positions

2023 – 2024     **Weiler Family Associate Professor** (with tenure), Department of Economics, BOSTON COLLEGE
2018 – 2023     **Assistant Professor**, Department of Economics, BOSTON COLLEGE
2022            **Visiting Assistant Professor**, Department of Economics, MASSACHUSETTS INSTITUTE OF TECHNOLOGY
2014 – 2018     **Assistant Professor**, Department of Economics, PENN STATE UNIVERSITY

## Education

2008 – 2014     Ph.D. and M.A. Economics, UNIVERSITY OF VIRGINIA
2002 – 2005     B.S. Economics, UNIVERSITY OF DELAWARE

## Research

### Published and Forthcoming Journal Articles

1. Aryal, G., **Murry, C.**, & Williams, J. W. (2023). Price discrimination in international airline markets. *forthcoming at Review of Economic Studies*.
2. Grieco, P. L., **Murry, C.**, & Yurukoglu, A. (2023). The evolution of market power in the us automobile industry. *forthcoming at Quarterly Journal of Economics*.
3. Li, F., **Murry, C.**, Tian, C., & Zhou, Y. (2023). Inventory management in decentralized markets. *forthcoming at International Economic Review*.
4. **Murry, C.**, & Newberry, P. (2022). Franchise contract regulations and local market structure. *The Journal of Law and Economics*, *65*(1), 105–130.
5. Ciliberto, F., **Murry, C.**, & Tamer, E. (2021). Market structure and competition in airline markets. *Journal of Political Economy*, *129*(11), 2995–3038.
6. Biglaiser, G., Li, F., **Murry, C.**, & Zhou, Y. (2020). Intermediaries and product quality in used car markets. *The RAND Journal of Economics*, *51*(3), 905–933.
7. **Murry, C.**, & Zhou, Y. (2020). Consumer search and automobile dealer colocation. *Management Science*, *66*(5), 1909–1934.
8. **Murry, C.** (2018). The effect of retail competition on relationship-specific investments: Evidence from new car advertising. *International Journal of Industrial Organization*, *59*, 253–281.

### Unpublished Drafts

1. Grieco, P. L., **Murry, C.**, Pinkse, J., & Sagl, S. (2023). Conformant and efficient estimation of discrete choice demand models, revisions requested at *Econometrica*.
2. **Murry, C.** (2017). Advertising in vertical relationships: An equilibrium model of the automobile industry.

# Appendix A

### Other Publications

1. **Murry, C.**, & Schneider, H. S. (2016). The economics of retail markets for new and used cars. In E. Basker (Ed.), *Handbook on the economics of retailing and distribution*. Edward Elgar Publishers.

## Editorial Responsibilities

2023 – pres.   **Associate Editor**, JOURNAL OF INDUSTRIAL ECONOMICS.

## Seminar and Conference Presentations

2024   International IO Conference (Boston), Montreal Summer IO Conference, ITAM Business School, Helsinki GSE

2023   NBER IO Summer Meeting (discussant), Cowles Summer Conference (discussant), Northwestern Kellogg MEDS, Rice University, MACCI Summer Institute (Edesheim), MACCI Empirical IO Conference, Chicago Booth Marketing, Virtual Quantitative Marketing Seminar (invited panelist)

2022   NBER Winter IO Meeting, Harvard, Yale, Microsoft Research New England, Cowles Summer Models and Measurement Conference, Cornell, Virtual Quantitative Marketing Seminar (invited panelist)

2021   Washington University in St. Louis, University of Michigan, MIT, Princeton, Stanford, Cornell, Texas A&M

2020   ASSA (San Diego), NYU Stern, London School of Economics (COVID cancelled), Toulouse Transportation Conference (invited, COVID cancelled), $(IO)^2$ Virtual Seminar

2019   University of Virginia, SEA Conference (Ft. Lauderdale), UPenn, Barcelona GSE Summer Forum Applied IO, University of Massachusetts - Amherst, Workshop on the Economics of Advertising and Marketing (Porto), Harvard Business School Markets and Competition Conference

2018   MIT, Ohio State, Wisconsin

2017   Drexel, Cornell, CEPR Applied IO Conference (Jerusalem), Hal White Antitrust Conference (Bates-White), KU Leuven, Toulouse School of Economics, Arizona, UNC - Chapel Hill, Boston College, Rochester Simon, ASSA Meetings, NBER Summer Institute

2013-2016   EARIE (Lisbon), Analysis Group, Federal Trade Commission Microeconomics Conference, International Industrial Organization Conference, Federal Trade Commission, UPenn, Quantitative Marketing and Economics Conference (MIT Sloan), Federal Trade Commission Micro Conference, Penn State, Georgetown, Northeastern, Arizona State, University of Rochester (Simon), Stony Brook, IIOC (Rising Stars Session, Chicago), Department of Justice, Federal Reserve Board of Governors, Econometric Society North American Summer Meetings, Southern Economic Association Annual Meetings (Atlanta), International Industrial Organization Conference (Rising Stars Session, Boston)

## Professional Activities

**Conference Organization**

2024   Scientific Committee, International Industrial Organization Conference
2024   Scientific Committee, EARIE

**Referee Service**

*Journal of Political Economy , Econometrica, American Economic Review, Quarterly Journal of Economics, Review of Economic Studies, RAND Journal of Economics, The Economic Journal, AEJ: Micro, AEJ: Applied, European Economic Review, Quantitative Economics Journal of Law and Economics, International Journal of Industrial Organization, Journal of Industrial Economics, Journal of Economics and Management Strategy, Review of Industrial Organization, Southern Economic Journal,* National Science Foundation

## Teaching and Advising

## Appendix A

**Boston College**
Industrial Organization: Competition and Antitrust (undergraduate, 2021, 2022)
Economics of Sports (undergraduate, 2019, 2020)
PhD Industrial Organization II (2019, 2020, 2021, 2022)
PhD Industrial Organization I (2022, 2023)
PhD Empirical Methods in Applied Microeconomics (2019, 2020, 2021)

**MIT**
Industrial Organization: Competition and Antitrust (undergraduate; Spring 2022)
PhD Industrial Organization (Spring 2022)

**Penn State University**
Industrial Organization (undergraduate; Fall 2014)
Economics of Sports (undergraduate; Spring 2017, 2018)
PhD Industrial Organization (Spring 2015,2016,2018)
PhD Empirical Methods in Economics (Fall 2015,2016,2017)

**PhD Advisees**(*committee chair, initial placement listed)
*Boston College*
Juan Fuentes Acosta, in progress
Yuzhi Yao, in progress
Rodrigo Gonzales*, in progress
Arnab Palit*, Bates White
Linqi Zhang, CUHK
Aastha Malhorta, Bates White
Vera Sharunova, 2023, Ernst & Young
Ryan Westphal, 2023, Brandeis *(White Dissertation Award for Social Sciences at BC)*
Kitika Goel*, 2022, Charles River Associates
Ratib Ali, 2022, Massachusetts AG Office
Xirong Lin, 2020, SUFE
Bogdon Genchev, 2020, Brattle Group

*Penn State*
Farhod Olimov, 2020, Dygonex
Roman Istomin, 2019, Uber
Naibin Chen, 2019, Bates White
Wenjing Ruan, 2018, Alibaba
Xiaolu Zhou, 2016, Xiamen University
Kai Li, 2016, Xiamen University

**Appendix B**

**CHARLES MURRY, PRIOR TESTIMONY**

*Stark Automotive, Inc. D/B/A South Point Hyundai and Genesis of Austin v. Hyundai Motor America and Genesis Motor America,* SOAH DKT NOS. 608-24-11546 & 608-24-11547, MVD DKT NOS. 24-0007-LIC & 24-0008-LIC, Texas Department of Motor Vehicles, Motor Vehicle Division; Deposition (January 2025)

*California New Car Dealers Association v. Volvo Group North America LLC aka Volvo Car USA, LLC,* Case No. 19C4L30570, California New Motor Vehicle Board; Expert Report (March 2019)

**Appendix C**

# Documents Considered List

**Legal Documents**

- Complaint for Injunctive Relief, *Diego Pavia v. National Collegiate Athletic Association*, November 18, 2024, and exhibits

- Declaration of Matthew Backus ISO Opposition to Plaintiff's Motion for Preliminary Injunction, *Alberto Osuna Sanchez v. National Collegiate Athletic Association*, November 22, 2024

- Memorandum In Support of Motion for Temporary Restraining Order and Preliminary Injunction, *Diego Pavia v. National Collegiate Athletic Association,* February 12, 2025, and exhibits.

- Motion for Temporary Restraining Order and Preliminary Injunction, *Alberto Osuna Sanchez v. National Collegiate Athletic Association,* February 11, 2025

- Verified Complaint for Damages and Injunctive Relief, *Alberto Osuna Sanchez v. National Collegiate Athletic Association*, February 12, 2025, and exhibits

**Public Press**

- Greg Barnes, "Next Level: UNC Athletics Financial Report," *Inside Carolina*, February 6, 2024, https://247sports.com/college/north-carolina/article/next-level-unc-athletics-financial-report-2022-23-226713624/#:~:text=UNC's%2028%20sports%20%E2%80%93%2013%20men's,net%20loss%20of%20$1.8%20million

- Ross Dellenger, "LSU Dwarfs Most SEC Brethren, Others Nationwide in Baseball Revenue, Profit," *The Advocate*, June 1, 2017, https://www.theadvocate.com/baton_rouge/sports/lsu/lsu-dwarfs-most-sec-brethren-others-nationwide-in-baseball-revenue-profit/article_5edd22c0-465c-11e7-8b99-c709d5eb08c1.html

**Websites**

- "Atlantic League Pro Baseball," *Atlantic League*, https://atlanticleague.com/

- Dan Butrymowicz, "Antitrust Violation vs. Injury-in-Fact: A distinction that makes a difference," February 26, 2016, https://www.ftc.gov/enforcement/competition-matters/2016/02/antitrust-violation-vs-injury-fact-distinction-makes-difference

- "Empire Baseball League," *Empire League*, https://empireproleague.com

- "Rule 4 Draft," *MLB*, https://www.mlb.com/glossary/transactions/rule-4-draft